IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DAVID ROBERT BENTZ, ) | |
| BRETT SHARP, ) | |
| JESSE PEREZ, ) | |
| MARCOS GARCIA, ) | |
| ARMANDO GALLANDO, and ) | |
| JOHN LEE, ) | |
| ) | |
|       Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 14-cv-00996-NJR |
| ) | |
| KIMBERLY BUTLER, ) | |
| NURSE LANG, ) | |
| MAJOR WESTFALL, ) | |
| LT. JAMES BEST, ) | |
| LT. EOVALDI, ) | |
| LT. SAMUELS, ) | |
| SGT. N. BEBOUT, ) | |
| SGT. C. MAYER, ) | |
| C/O JOSHUA BERNER, ) | |
| C/O SHANE QUANDT, ) | |
| C/O JASON REDNOUR, ) | |
| C/O DONALD LINDENBERG, ) | |
| C/O JARED PHILLIPS, ) | |
| C/O McMILLAN,  and ) | |
| UNKNOWN PARTIES, ) | |
| ) | |
|       Defendants. ) | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiffs David Robert Bentz, Brett Sharp, Jesse Perez, Marcos Garcia, Armando Gallando, and John Lee, inmates in Menard Correctional Center, bring this action for deprivations of their constitutional rights pursuant to 42 U.S.C. § 1983, relative to the conditions of their confinement. Plaintiffs also seek to have this case certified as a class action on behalf of all inmates housed in the North-2 unit at Menard.

By Order dated September 17, 2014, Plaintiffs' motion for a temporary restraining order was denied (Doc. 9). The complaint is now before the Court for a preliminary review pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> > (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> > (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Put succinctly, the complaint in this case lacks specificity sufficient to adequately present any plausible claim under the *Twombly* standard. In apparent anticipation of proceeding as a class action, Plaintiffs have offered an over-arching narrative relative to every prisoner on the N-2 unit, while failing to offer any specific allegations linking themselves and the fourteen named defendants.

## The Complaint

Plaintiffs claim that throughout the summer of 2014, whenever the heat index exceeded 90 degrees, the fourteen prison officials named as defendants, and other unidentified prison officials, did not make health and safety checks throughout the day. In addition, it is alleged that these officials failed to provide inmates in the North-2 unit with adequate ice, water, cold drinks, fans, and other means to keep cool, thereby endangering the inmates' health and safety, in violation of the Eighth Amendment. It is also alleged that Defendants acted with a retaliatory motive and with deliberate indifference and/or negligent intent.

The North-2 unit houses approximately 800 inmates; half of the inmates are "general population" and half are in segregation status. Many (if not all) of the segregation inmates are housed in cells with "solid" doors that do not allow for ventilation. Plaintiffs explain that some inmates in the unit are elderly and/or suffer from ailments that place them at even greater risk from high temperatures and insufficient airflow, such as diabetes, asthma, and heart disease. It is asserted that within a three-day period (August 23-25, 2014) two inmates passed away—one due to a heart attack, the other specifically due to the extreme heat. No other dates when the heat index topped 90 degrees are referenced in the complaint.

After inmates filed grievances regarding the conditions of confinement, a staff meeting was held on August 27, 2014. Plaintiffs allege that prison staff conspired at this meeting to retaliate by passing out dirty, hot water to the inmates.

Plaintiffs seek class certification and ultimately injunctive relief, as well as nominal, compensatory, and punitive damages.

Based on the allegations in the complaint, the Court finds it convenient to divide the *pro se* action into seven counts, mirroring the claims as they are presented in the complaint. The

parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

> **Count 1:** Menard has a policy and practice of deliberate indifference to the health and safety of inmates in the N-2 unit when the heat index tops 90 degrees, in violation of the Eighth Amendment;
>
> **Count 2:** Nurse Lang failed to make regular rounds in the N-2 unit when the heat index topped 90 degrees, in violation of prison policies and the Eighth Amendment;
>
> **Count 3:** Defendants Westfall, Best, Samuels, Mayer, Berner, Quandt, Rednour, Lindenberg, Phillips, McMillan and other unknown staff on the 7 a.m. to 3 p.m. shift were deliberately indifferent to the health and safety of inmates in the N-2 unit when the heat index topped 90 degrees, in violation of the Eighth Amendment;
>
> **Count 4:** Defendants Eovaldi, Bebout, and other unidentified staff on the 3 p.m. to 11 p.m. shift were deliberately indifferent to the health and safety of inmates in the N-2 unit when the heat index topped 90 degrees, in violation of the Eighth Amendment;
>
> **Count 5:** The action or inaction of Defendant Warden Butler, and other unidentified members of the Menard administrative staff, created conditions of confinement that jeopardized the health and safety of inmates in the N-2 unit, in violation of the Eighth Amendment;
>
> **Count 6:** Defendants Butler, Lang, Westfall, Best Eovaldi, Samueals, Bebout, Berner, Quandt, Rednour, Lindenberg, Phillips, McMillan and unidentified others conspired to endanger the health and safety of inmates on the N-2 unit when the heat index topped 90 degrees, in violation of the Eighth Amendment; and
>
> **Count 7:** All named Defendants and other unidentified Menard personnel, individually or in conspiracy, retaliated against inmates in the N-2 unit for filing grievances regarding the conditions of their confinement, in violation of the Eighth and First Amendments.

**Discussion**

Relative to Counts 1-6, the Eighth Amendment to the United States Constitution protects prisoners from being subjected to cruel and unusual punishment. U.S. CONST., amend. VIII. *See also Berry v. Peterman*, 604 F.3d 435, 439 (7th Cir. 2010). Eighth Amendment protection extends to conditions of confinement that objectively pose a substantial risk of serious harm, including health and safety. *See Estate of Miller, ex rel. Bertram v. Tobiasz*, 680 F.3d 984 (7th Cir. 2012); *Farmer v. Brennan,* 511 U.S. 825, 834 (1994).

There is precedent for finding that, depending on ventilation concerns and the length of time involved, a heat index over 90 degrees can pose an objectively serious threat to health and safety if ameliorative steps are not taken, such as providing fans and ice water. *See Gates v. Cook*, 376 F.3d 323, 334 (5th Cir. 2004). Thus, the allegations about the conditions of confinement when the heat index rises above 90 degrees are *generally* within the ambit of the Eighth Amendment. Nevertheless, Counts 1-6 require closer inspection.

There is also a subjective aspect to an Eighth Amendment claim. Section 1983 creates a cause of action based on personal liability and predicated upon fault; "to be liable under [Section] 1983, an individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005) (citations omitted). Prison officials can also violate the Eighth Amendment's proscription against cruel and unusual punishment when their conduct demonstrates "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A prison official may be liable, however, "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. Proving deliberate indifference requires more than a showing of negligent or even grossly

negligent behavior. *Id*. at 835. Rather, the corrections official must have acted with the equivalent of criminal recklessness. *Id*. at 836–37.

Because personal involvement is required for liability to attach, the *respondeat superior* doctrine—supervisor liability—is not applicable to Section 1983 actions. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)). Allegations that senior officials were personally responsible for creating the policies, practices, and customs that caused a constitutional deprivation can, however, suffice to demonstrate personal involvement for purposes of Section 1983 liability. *See Doyle v. Camelot Care Centers, Inc.,* 305 F.3d 603, 615 (7th Cir. 2002). Moreover, the Court notes that each Defendant is also each sued in his or her official capacity. Official capacity suits are a way of suing the governmental entity of which the defendant official is an agent. *Kentucky v. Graham,* 473 U.S. 159, 166 (1985). Liability stems from the execution of an official policy, practice, or custom by a government official. *See, e.g., Sow v. Fortville Police Dep't,* 636 F.3d 293, 300 (7th Cir. 2011) (citing *Graham,* 473 U.S. at 165–66). However, the Eleventh Amendment precludes an award of monetary damages in an official capacity suit, including punitive damages, and, therefore, declaratory and injunctive relief are the only possible remedies for these claims. *See* 42 U.S.C. § 1981a(b)(1); *Minix v. Canarecci,* 597 F.3d 824, 830 (7th Cir. 2010). Counts 1-6 must be analyzed with these considerations in mind.

*Count 1*

Count 1 encompasses a general assertion by Plaintiffs that there is a policy or practice at Menard of deliberate indifference to the health and safety of inmates in the N-2 unit when the heat index tops 90 degrees. But such a policy or practice is not attributed to any named defendant and, therefore, no individual liability can attach.

Count 1 (and the complaint as a whole) also fails to state an official capacity claim relative to the conditions of confinement. An official capacity claim requires the entity itself to be a "moving force" behind the constitutional deprivation; the entity's policy, practice, or custom must have played a part in the violation. *Graham*, 473 U.S. at 166 (citations to authority omitted). But the complaint does not identify an Illinois Department of Corrections or Menard sanctioned policy, practice, or custom. Rather, specific acts and omissions (such as not providing ice water) are identified, and a conclusory assertion is offered that "Defendants" have a policy and practice. Thus, neither the *Graham* nor the *Twombly* pleading standard is satisfied.

For these reasons, Count 1 will be dismissed without prejudice. All official capacity claims in the complaint also will be dismissed without prejudice.

*Count 2*

Count 2 pertains to Nurse Lang's failure to make regular rounds when the heat index is over 90 degrees (*see* Doc. 1, p. 9). Even if prison policies dictate that regular rounds be made, the violation of a prison rule or regulation is not, by itself, a constitutional violation. *See Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir, 2003). The complaint does not offer any indication of a specific incident to support the assertion that Lang was deliberately indifferent. Therefore, the claim against Lang fails to meet the *Twombly* pleading threshold and will be dismissed without prejudice.

*Counts 3-5*

Counts 3-5 each allege that prison personnel were deliberately indifferent to the health and safety of inmates in the N-2 unit whenever the heat index rose above 90 degrees. Count 3 pertains to members of the 7 a.m. to 3 p.m. shift (*see* Doc. 1, p. 9); Count 4 is brought against members of the 3 p.m. to 11 p.m. shift (*see* Doc. 1, pp. 9-10); and Court 5 is relative to Warden

Butler and unidentified members of the Menard administrative staff (*see* Doc. 1, p. 10). All three counts must be dismissed under the *Twombly* pleading standard because nothing more than conclusory assertions are pleaded. Again, the complaint lists defendants but fails to offer any facts showing how any defendant was deliberately indifferent toward any plaintiff. Dismissal of Counts 3-5 will be without prejudice.

*Count 6*

Count 6 alleges an overarching conspiracy. Claims of conspiracy necessarily require a certain amount of factual underpinning to survive preliminary review. *See Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008) (quoting *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006)). "To establish the existence of a conspiracy, a plaintiff must demonstrate that the conspirators have an agreement to inflict injury or harm upon him." *Sow v. Fortville Police Dept.*, 636 F.3d 293, 304–05 (7th Cir. 2011). "The agreement may be inferred from circumstantial evidence, but only if there is sufficient evidence that would permit a reasonable jury to conclude that a meeting of the minds had occurred and that the parties had an understanding to achieve the conspiracy's objectives." *Id*. at 305 (quoting *Hernandez v. Joliet Police Dept.*, 197 F.3d 256, 263 (7th Cir.1999)).

According to the complaint, on August 27, 2014 (after the three-day period when the heat index was above 90 degrees), there was a "staff meeting with regards to the excessive heat within N-2 as a result of the Plaintiffs' and numerous class members numerous grievances…" [sic] (Doc. 1, p. 12). A staff meeting, by itself, does not reasonably indicate that there was a conspiracy. The bald assertions that a conspiracy existed fail to meet the *Twombly* pleading standard, and Count 6 also will be dismissed without prejudice.

*Count 7*

Count 7 alleges that Defendants retaliated against Plaintiffs for filing grievances about the conditions of confinement by passing out dirty, hot water (*see* Doc. 1, p. 12). This retaliatory practice started after the August 27 staff meeting, which itself was precipitated by inmate grievances regarding the high temperature in N-2. Again, a lack of any specifics dooms this claim under the *Twombly* standard. It is not alleged that any of the named Plaintiffs filed a grievance or were actually served hot, dirty water by any specific defendant. Consequently, Count 7 will be dismissed without prejudice.

## **Pending Motions**

### *Class Certification*

Having dismissed all claims presented in the complaint, Plaintiffs' motion for class certification (Doc. 7) will be denied as moot.

### *Recruitment of Counsel*

Because all claims are being dismissed without prejudice—meaning that Plaintiffs may attempt to cure the deficient complaint—the motion for recruitment of counsel (Doc. 8) warrants consideration.

There is no constitutional or statutory right to counsel in federal civil cases. *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010); *see also Johnson v. Doughty*, 433 F.3d 1001, 1006 (7th Cir. 2006). Nevertheless, the district court has discretion under 28 U.S.C. § 1915(e)(1) to recruit counsel for an indigent litigant. *Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866–67 (7th Cir. 2013).

When a *pro se* litigant submits a request for assistance of counsel, the Court must first consider whether the indigent plaintiff has made reasonable attempts to secure counsel on his own. *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013) (citing *Pruitt v. Mote*, 503 F.3d 647,

654 (7th Cir. 2007) (*en banc*)). If so, the Court must examine "whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it." *Navejar*, 718 F.3d at 696 (quoting Pruitt, 503 F.3d at 655). "The question ... is whether the plaintiff appears competent to litigate his own claims, given their degree of difficulty, and this includes the tasks that normally attend litigation: evidence gathering, preparing and responding to motions and other court filings, and trial." *Pruitt*, 503 F.3d at 655. The Court also considers such factors as a plaintiff's "literacy, communication skills, education level, and litigation experience." *Id*.

Plaintiffs (at least Plaintiff Bentz) have made an effort to secure counsel, without success. Plaintiffs correctly note that, given their number and their desire to seek class certification, an attorney would be beneficial in terms of logistical considerations. At this very early juncture, however, there is no reason to believe that Plaintiffs will not be able to draft an amended complaint that states a colorable claim. All Plaintiffs are housed at Menard, and they have not described any difficulties in proceeding jointly without counsel. The complaint and their motions to date reflect that they are knowledgeable about the law and procedure and can articulate their claims well, even though they have omitted sufficient factual details—something that should be easily cured. Therefore, the motion for recruitment of counsel (Doc. 8) will be denied without prejudice. The Court will remain open to recruiting counsel in the future.

*Pauper Status*

Plaintiffs' individual motions for leave to proceed *in forma pauperis* (Docs. 2-5, 7) will be decided in due course. The Court has yet to receive a certified trust fund statement for each plaintiff, which is required under 28 U.S.C. § 1915(a)(2).

*Service upon Plaintiffs*

Plaintiff Bentz has filed a notice/motion indicating that he is the only one of the six plaintiffs receiving copies of transmissions from the Court (Doc. 13). Court personnel recently reiterated to Menard personnel that they need to make copies of electronic transmissions from the Court for *each* plaintiff in a case. Plaintiffs should alert the Court any time sufficient copies are not being provided when documents are transmitted from the Court via the electronic filing system.

### Disposition

**IT IS HEREBY ORDERED** that, for the reasons stated, **COUNTS 1-7** fail to state claims upon which relief may be granted; accordingly the complaint is **DISMISSED without prejudice**, and all Defendants are **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that on or before **November 10, 2014**, Plaintiffs shall file an amended complaint. Failure to file an amended complaint by the prescribed deadline will result in the dismissal of the complaint and this action with prejudice; in that situation, *each* Plaintiff would be assessed a "strike" under 28 U.S.C. § 1915(g).

**IT IS FURTHER ORDERED** that: (1) Plaintiffs' motion for class certification (Doc. 7) is **DENIED as moot**; (2) Plaintiffs' motion for recruitment of counsel (Doc. 8) is **DENIED without prejudice**; and (3) the Clerk of Court shall **TERMINATE** Plaintiff's "motion" regarding service of documents (Doc. 13).

Finally, Plaintiffs are **ADVISED** that they are each under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change of their address; the Court will not independently investigate their whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this

action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: October 15, 2014**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**